**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| TRINA GUNNARSON,<br><br>                              Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,[1]<br>Acting Commissioner of Social Security*,*<br><br>                              Defendant. | Case No. 2:20-cv-02107-CLB<br><br>**ORDER DENYING MOTION TO REMAND AND GRANTING CROSS-MOTION TO AFFIRM**<br><br>[ECF Nos. 21, 22] |

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Trina Gunnarson's ("Gunnarson") application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. Currently pending before the Court is Gunnarson's motion for reversal and/or remand, (ECF No. 21), and the Commissioner's cross-motion to affirm and opposition, (ECF No. 22). In Gunnarson's motion, Gunnarson seeks the reversal of the administrative decision and/or remand for an award of benefits. (ECF No. 21.) The Commissioner filed an opposition and cross-motion to affirm, (ECF No. 22). Having reviewed the pleadings, transcripts, and the Administrative Record ("AR"), (ECF No. 17), the Court concludes that the Commissioner's finding that Gunnarson could perform other work that exists in significant numbers in the national economy was supported by substantial evidence. Therefore, the Court denies Gunnarson's motion for remand, (ECF No. 21), and grants the Commissioner's cross-motion to affirm, (ECF No. 22).

///

///

---

[1]  Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

**I.     STANDARDS OF REVIEW**

**A.     Judicial Standard of Review**

This court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

"However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B.     Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of their claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform their prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to

the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits the individual from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the

intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four to determine whether the individual has the RFC to perform their past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform their past work, then a finding of not disabled is made. If the individual is unable to perform any past relevant work or does not have any past relevant work, then the analysis proceeds to the fifth and final step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the individual is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

**II.    CASE BACKGROUND**

    **A.    Procedural History**

Gunnarson applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on March 17, 2015, and March 20, 2015, respectively, with an alleged disability onset date of August 31, 2014. (AR 322-34.) On December 19, 2017,

1  Gunnarson amended her alleged disability onset date to September 18, 2015. (AR 359.)
2  Gunnarson's application was denied initially on June 4, 2015, and upon reconsideration
3  on May 27, 2016. (AR 249-62.) Gunnarson subsequently requested an administrative
4  hearing. (AR 263-70.)

5  On December 18, 2017, Gunnarson and her attorney appeared at an in-person
6  hearing before an ALJ. (AR 40-87.) A vocational expert ("VE") also appeared at the
7  hearing via telephone. (*Id.*) The ALJ issued a written decision on March 27, 2018, finding
8  Gunnarson was not disabled because she could perform other work that exists in
9  significant numbers in the national economy. (AR 12-32.) Gunnarson appealed, and the
10 Appeals Council denied review on November 19, 2018. (AR 1-3.) Accordingly, the ALJ's
11 decision became the final decision of the Commissioner.

12 Having exhausted all administrative remedies, Gunnarson filed a complaint for
13 judicial review on February 21, 2019. (AR 1359-62.) Ultimately, the parties stipulated to
14 remand the case to an ALJ to issue a new decision "with instructions to reconsider the
15 opinion of consultative examiner Dr. Richard Cestkowski and explain what weight is given
16 to this opinion." (AR 1373-76.) On December 11, 2019, the Appeals Council issued an
17 order remanding the case to an ALJ. (AR 1379-1380.)

18 On July 13, 2020, Gunnarson and her attorney appeared at a telephonic remand
19 hearing before a new ALJ. (AR 1296-1358.) A VE also appeared at the hearing. (*Id.*) The
20 ALJ issued a written decision on August 17, 2020, finding that Gunnarson was not disabled
21 because she could perform other work that exists in significant numbers in the national
22 economy. (AR 1255-86.) On that date, the ALJ's decision became the final decision of the
23 Commissioner. Having exhausted all administrative remedies, Gunnarson filed a
24 complaint for judicial review on November 16, 2020. (ECF Nos. 1-1, 5.)

25 ///
26 ///
27 ///
28 ///

**B.     ALJ's Decision**

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 1255-86.) Ultimately, the ALJ disagreed that Gunnarson has been disabled from September 18, 2015, the alleged onset date, through the date of the decision. (AR 1285-86.) The ALJ held, based on Gunnarson's age, education, work experience, and RFC, that Gunnarson could perform other work that exists in significant numbers in the national economy. (AR 1284-85.)

In making this determination, the ALJ first determined that Gunnarson "meets the insured status requirements of the Social Security Act through December 31, 2019." (AR 1261.) The ALJ then went to step one of the five-step sequential evaluation, where the ALJ found Gunnarson had not engaged in substantial gainful activity since the alleged onset date of September 18, 2015. (*Id.*) At step two, the ALJ found Gunnarson had the following severe impairments: anxiety; depression; personality disorder; mild neurocognitive disorder; posttraumatic stress disorder (PTSD); neck disorder; back disorder; substance abuse disorder (methamphetamine); chronic pain syndrome; obesity; and migraines. (AR 1261-62.) At step three, the ALJ found Gunnarson did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 1262-64.)

Next, the ALJ determined Gunnarson has the RFC to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) except:

> the work must be routine and repetitive, the claimant can be expected to be off task 5% of the time, no exposure to more than a "moderate" noise intensity level as described in the Selected Characteristics of Occupations, *e.g.,* a three (3), occasional use of ramps and stairs, occasional postural activity but no climbing of ladders, ropes, and scaffolds and no crawling, no work at exposed heights, and can frequently work around moving machinery.

(AR 1264-83.)

///

The ALJ found Gunnarson's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged; however, Gunnarson's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 1266.) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, Gunnarson's treatment history since the alleged disability onset date, Gunnarson's demonstrated abilities and reported activities, and the evidence showing that multiple sources have raised the issue of symptom exaggeration and/or malingering. (AR 1264-1283.) The ALJ determined that he could not "place much reliance on [Gunnarson's] subjective complaints or effort-dependent testing, the results of which are within the claimant's control." (*Id.*) The ALJ relied more on "truly objective evidence." (AR 1266.) The ALJ took a "longitudinal approach" to the evidence "rather than relying on one particular clinical examination." (*Id.*) The ALJ then determined that Gunnarson is not capable of performing any past relevant work as a computer repair technician, fast food worker, or customer service representative, as actually or generally performed. (AR 1283-84.)

Relying on the testimony of the VE, the ALJ determined that Gunnarson's age, education, work experience, and RFC would allow her to perform other occupations existing in significant numbers in the national economy, such as: Marking Clerk, Bench Worker Helper, or Ticket Taker. (AR 1284-85.) Accordingly, the ALJ held that Gunnarson had not been under a disability since the alleged onset date of September 18, 2015, through the date of the decision, and denied Gunnarson's claim. (AR 1285-86.)

**III.    ISSUE**

Gunnarson seeks judicial review of the Commissioner's final decision denying DIB and SSI under Titles II and XVI of the Social Security Act. (ECF No. 21.) Gunnarson raises a single issue for this Court's review: whether the ALJ's RFC finding "is supported by substantial evidence where the opinions relied upon were admittedly outdated and the more recent opinions were assigned 'little weight.'" (*Id.* at 6-18.)

///

## IV.     DISCUSSION

Gunnarson argues the ALJ erred when determining her RFC because the ALJ: (1) gave little weight to the 2016 opinion of treating physician Dr. Blake and the 2018 and 2019 opinions of treating physician Dr. Tkach; (2) the ALJ gave partial weight to the 2015 and 2016 opinions of non-examining State agency consultants Drs. Pappas and Coleman; (3) and the ALJ gave partial weight to the 2016 opinion of Dr. Cestkowski, who conducted a one-time consultative examination. (ECF No. 21 at 6-7.) Specifically, Gunnarson argues that the ALJ relied upon "admittedly outdated" opinions and "more recent opinions were assigned 'little weight.'" (*Id.* at 7.)

Within the administrative record, an ALJ may encounter medical opinions from three types of physicians: treating, examining, and non-examining. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). For claims filed before March 27, 2017, each type is accorded different weight. 20 C.F.R. §§ 404.1527, 416.927. Generally, more weight is given to the opinion of a treating source than the opinion of a doctor who did not treat the claimant. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Medical opinions and conclusions of treating physicians are accorded special weight because these physicians are in a unique position to know claimants as individuals, and because the continuity of their dealings with claimants enhances their ability to assess the claimants' problems. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("A treating physician's opinion is entitled to 'substantial weight.'").

To evaluate whether an ALJ properly discounted a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The ALJ must provide "specific and legitimate reasons" for discounting a contradicted treating physician's opinion. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and the conflicting clinical evidence, stating [their] interpretation

thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). "[A]n [ALJ] may disregard a medical opinion that is brief, conclusory, and inadequately supported by clinical findings." *Britton v. Colvin*, 787 F.3d 1011, 1012 (9th Cir. 2015) (per curiam). Further, an ALJ "may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (quoting *Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 602 (9th Cir. 1999)).

Because Drs. Blake, Tkach, Pappas, Coleman, and Cestkowski's opinions regarding Gunnarson's RFC were contradicted by other physicians, the ALJ could reject the opinions by giving "specific and legitimate reasons" for doing so. *Bayliss*, 427 F.3d at 1216.

**A.   Analysis**

On August 17, 2020, the ALJ denied Gunnarson's DIB and SSI claims, stating that Gunnarson was not disabled because she could make a successful adjustment to other work that exists in significant numbers in the national economy. (AR 1285.) The ALJ articulated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the work must be routine and repetitive, the claimant can be expected to be off task 5% of the time, no exposure to more than a "moderate" noise intensity level as described in the Selected Characteristics of Occupations, *e.g.*, a three (3), occasional use of ramps and stairs, occasional postural activity but no climbing of ladders, ropes, and scaffolds and no crawling, no work at exposed heights, and can frequently work around moving machinery.

(AR 1264.) The ALJ found that Gunnarson was unable to perform past relevant work, but that Gunnarson could perform occupations existing in significant numbers in the national economy, such as: Marking Clerk, Bench Worker Helper, and Ticket Taker. (AR 1284-85.)

In determining Gunnarson's RFC, the ALJ reviewed Gunnarson's subjective testimony, the objective medical evidence in the record, and the opinions of multiple

10

doctors—not just Drs. Blake, Tkach, Pappas, Coleman, and Cestkowski—and found as follows:

### 1. Opinions of Drs. Blake, Tkach, Pappas, Coleman, and Cestkowski

The ALJ gave partial weight to Dr. Pappas May 12, 2015, and May 28, 2015, opinions in-part because "[d]uring [Gunnarson's] March 7, 2016, consultative examination, despite her reported pain level, [Gunnarson] was in no acute distress throughout the evaluation process." (AR 1276.) The ALJ also noted that "Medical evidence was submitted after the State Agency medical consultants gave their opinions, and [the ALJ] reviewed more medical evidence than they did. [The ALJ] also more thoroughly considered the issue(s) of symptom exaggeration and/or malingering." (*Id.*) The ALJ also gave partial weight to Dr. Coleman's May 5, 2016, opinion affirming Dr. Pappas's findings. (*Id.*)

The ALJ gave partial weight to Dr. Cestkowski's March 7, 2016, opinion in-part because:

> Dr. Cestkowski's limitation regarding standing/walking of "at least 2 hours" is contradicted by the doctor admitting there was no objective evidence of lumbar radiculopathy at the consultative examination, [Gunnarson] demonstrating a normal gait and having no difficulty with transfers during the consultative examination, [Gunnarson] demonstrating normal motor strength in the lower extremities (5/5), etc. A State Agency medical consultant subsequently noted that Dr. Cestkowski's examination was "essentially entirely normal" (Ex B10A/11, 17; Ex B11A/11, 17). The State Agency medical consultant did not adopt a 2-hour limitation for standing and/or walking, because "a limitation of 2 hrs stand/walk also has no documentary support" (Ex B10A/17; Ex B11A/17).

(AR 1277-78.) The ALJ noted that "[d]espite her reported pain level, [Gunnarson] was in no acute distress throughout the evaluation process." (*Id.*) The ALJ also noted that he considered more medical evidence than Dr. Cestkowski did, and he more thoroughly considered the issues of symptom exaggeration and/or malingering. (AR 1278.)

The ALJ gave Dr. Blake's September 6, 2016, opinion little weight, in-part because:

> [t]he longitudinal record does not persuasively reflect such extreme limitations. . . . Dr. Blake failed to provide much by way of persuasive evidence to support his opinion(s) but instead seems to repeat in large part

11

> the claimant's subjective complaints, and she has been documented as exaggerating her symptoms and/or malingering.

(AR 1279.) The ALJ also found that Dr. Blake repeated the allegations of Gunnarson, which are contradicted by the longitudinal record, including the wide variety of activities the claimant has admitted to doing, including driving, babysitting multiple toddlers, running errands, traveling, shopping, doing housework, etc. (*Id.*)

The ALJ gave little weight to Dr. Tkach's November 19, 2019, opinion in-part because:

> The doctor's opinions are conclusory. He primarily relied on diagnoses and brief descriptions of the claimant's subjective complaints. The objective medical evidence and the claimant's reported activities, such as walking for exercise, contradict such extreme opinions. The doctor failed to identify any chronic and reliable clinical findings to support his opinions. While the claimant sometimes reported episodes of symptom exacerbation, the longitudinal progress notes indicate the claimant was doing much better overall with relatively conservative treatment than the doctor was willing to admit in his opinions. The contemporaneous progress notes from the doctor are cursory, often containing incomplete clinical examinations and/or abnormal examination findings described in vague terms (see Ex B37F). Nonetheless, the claimant is usually described as having a normal gait, intact/normal memory, etc. The doctor failed to address the issue of the claimant's documented symptom exaggeration. It is unclear what records, if any, the doctor reviewed prior to giving his opinion. Parts of his opinion appear to be mere speculation, such has how many times the claimant would need an unscheduled break(s) during the workday.

(AR 1280-81.) The ALJ reviewed Gunnarson's February 8, 2018, and March 13, 2018, reports of pain management and dizziness. The ALJ noted that Dr. Tkach "prescribed medication to maintain balance and a four-prong cane for use with stability (Ex B37F/48)." (AR 1269.) The ALJ determined that "[t]he longitudinal evidence, however, does not substantially support that a cane was or is medically necessary, and the claimant has admitted that she walks without using a cane." (*Id.*)

### 2.   Other Medical Opinions in the Record

In addition to the opinions of Drs. Blake, Tkach, Pappas, Coleman, and Cestkowski, the ALJ discussed the weights given to several other opinions and found as follows:

The ALJ gave partial weight to Dr. Torigoe's May 19, 2015, opinion in-part because "[t]he opinion was provided before the currently alleged disability onset date, and therefore

before the relevant period. . . . [The ALJ] also considered more medical evidence than Dr. Torigoe did, and [the ALJ] more thoroughly considered the issue(s) of symptom exaggeration and/or malingering." (AR 1277.)

The ALJ gave partial weight to Dr. Wildman's Aprill 11, 2016, opinion in-part because "Dr. Wildman failed to address adequately the well-documented symptom exaggeration in his report and how he factored that into his opinion. . . . Dr. Wildman did not have a longitudinal perspective. . . ." (AR. 1278.)

The ALJ gave partial weight to Dr. Caruso-Radin's May 25, 2016, opinion in-part because the ALJ "reviewed more medical evidence than Dr. Caruso-Radin did, and [the ALJ] more thoroughly considered the issue(s) of symptom exaggeration and/or malingering." (AR 1277.)

The ALJ gave little weight to Dr. Young's March 28, 2017, opinion in-part because "no gross disturbances were noted in the claimant's affect or behavior. Her alertness was increased, and her posture and hygiene were average. Her mood was depressed. She was cooperative. . . . Dr. Young did not have a longitudinal perspective when he examined [Gunnarson] and gave his opinion." (AR 1279-80.)

The ALJ gave little weight to Dr. Hixon-Brenenstall's October 10, 2018, opinion in-part because "[t]he doctor apparently had no medical records to review and therefore did not have a longitudinal perspective. The doctor was relying on the claimant's subjective complaints and a one-time evaluation. The doctor apparently was unaware that the claimant gave her incorrect information about facts regarding the claimant's history." (AR 1280.) Additionally, the ALJ determined that "[t]he claimant's reported activities contradict problems interacting with the public and co-workers/supervisors, including her going to movies, plays, Walmart, and emergency rooms, babysitting to earn extra money, denying getting anxiety/stress from others to vocational rehabilitation, etc." (*Id.*)

///
///
///

The ALJ gave little weight to Mr. McCandless's October 11, 2018, opinion in-part because:

> Mr. McCandless is not an acceptable medical source (20 CFR 404.1502(a) and 416.902(a)). He also gave an opinion on an issue reserved to the Commissioner of the Social Security Administration (20 CFR 404.1527 and 416.927). Mr. McCandless failed to mention any specific evidence he relied on for his conclusions other than diagnoses based in part on subjective complaints of pain.

(*Id.*) The ALJ also determined that "Mr. McCandless does not give the impression that he conducted any kind of comprehensive review of the claimant's longitudinal medical records. He therefore does not have a longitudinal perspective." (*Id.*)

The ALJ gave little weight to Dr. Dodge's November 26, 2019, opinion in-part because:

> Dr. Dodge relied heavily on [Gunnarson's] subjective complaints, but the longitudinal record documents that she will exaggerate her symptoms. The doctor does not appear to be aware of even basic facts about the claimant's life. . . . Dr. Dodge did not have a longitudinal perspective and did not seem interested in reviewing the claimant's medical records from other providers or examiners.

(AR 1281-82.) The ALJ also determined that "[t]he progress notes show that Dr. Dodge rarely, if ever, performed anything akin to a full mental status examination. His progress notes do not substantially support the degree of limitations contained in his opinion(s)." (*Id.*)

The ALJ gave little weight to Ms. Line/Lino's May 28, 2020, opinion in-part because:

> Ms. [Line/Lino] does not identify what medical qualifications, if any, that she has. . . . Ms. [Line/Lino] provides relatively little information in terms of clinical findings and objective signs to support her rather extreme opinion. She appears to rely heavily on [Gunnarson's] subjective complaints, which is problematic given the amount of documentation in the record that the claimant will exaggerate her symptoms and/or malinger.

(AR 1282.) Additionally, the ALJ noted that "Ms. Line or Lino fails to state what medical records she has reviewed." (*Id.*)

///

///

### 3. Objective Medical Evidence and Subjective Testimony

In addition to weighing the various medical opinions contained in the record, the ALJ also discussed, at length and in detail, the objective medical evidence and Gunnarson's subjective testimony.

The ALJ noted that the "Disability Report (Ex B2E), Headache Questionnaire (Ex B7E), Function Report (Ex B10E), and Disability Report – Appeal at the reconsideration level (Ex B11E) were all completed and submitted long before the claimant's currently alleged disability onset date of September 18, 2015." (AR 1264-65.) The ALJ noted that Gunnarson herself completed a January 12, 2016, Function Report form by hand. (AR 1265.) The ALJ then noted Gunnarson's Disability Report – Appeal submitted at the hearing level (Ex B15E/2), Gunnarson's testimony at the December 18, 2017, hearing, and Gunnarson's testimony at the July 13, 2020, remand hearing. (*Id.*)

The ALJ reviewed Gunnarson's MRI scans from June 10, 2010, February 21, 2015, June 30, 2015, March 22, 2016, April 20, 2017, August 3, 2018, and October 16, 2018, and noted that Gunnarson testified to having back surgery in May of 2015. The ALJ also noted that Gunnarson successfully passed the medical examination for a commercial driver's license on March 17, 2016, that Gunnarson underwent a lumbar intra-articular facet injection on July 16, 2015, and January 7, 2016, and that Gunnarson underwent a lumbar epidural steroid injection on February 18, 2016. (AR 1266-83.) The ALJ then reviewed Gunnarson's September 15, 2015, September 18, 2015, October 1, 2015, November 2, 2015, December 22, 2015, and January 28, 2016, reports of pain. (AR 1267-71.)

The ALJ noted that on March 10, 2016, Gunnarson reported that her pain was getting worse, however, she was in no acute distress, and her gait and station were normal. (AR 1268.) The ALJ also noted that on April 20, 2016, Gunnarson reported symptoms. However, upon examination "she was in no acute distress, and her gait and station were normal." (*Id.*) The ALJ also reviewed Gunnarson's April 4, 2016, April 11,

2016, August 22, 2016, September 28, 2016, January 20, 2017, and March 22, 2017, examinations. (AR 1271-72.)

The ALJ then determined that Gunnarson "had a normal electromyography" on June 6, 2016. (AR 1268.) The ALJ also noted that on July 14, 2016, Gunnarson "reported feeling well with her health conditions being managed with her current medications, and she denied any concerns." (*Id.*) The ALJ determined that Gunnarson's "musculoskeletal examination was essentially normal" and that Gunnarson reported exercising moderately. (*Id.*) The ALJ reviewed Gunnarson's August 22, 2016, report of pain after a motor vehicle accident. (*Id.*) The ALJ wrote, "[Gunnarson's] physician indicated it was reasonable her pain had worsened after her car accident, but [the physician] recommended the claimant continue low impact aerobic exercise and cautioned [Gunnarson] not to remain sedentary (Ex B18F/3)." (*Id.*) The ALJ reviewed Gunnarson's March 15, 2017, and April 3, 2017, reports of back pain. (AR 1269.) The ALJ discussed the AR concerning these incidents, and the ALJ noted that on May 1, 2017, Gunnarson reported that her pain was relieved by Percocet. (*Id.*)

The ALJ discussed that Gunnarson was diagnosed as obese on May 8, 2018, and that Gunnarson was told to diet and maintain regular exercise by walking. (*Id.*) The ALJ then noted Gunnarson's August 3, 2018, computed tomography scan and Gunnarson's March 18, 2019, reports of pain after a recent fall. The ALJ also noted the October 11, 2018, letter from the State of Nevada, Bureau of Vocational Rehabilitation. (AR 1269-70.) The ALJ also reviewed Gunnarson's April 8, 2019, May 13, 2019, and September 18, 2019, reports of pain treatment.

In sum, the ALJ presented and discussed a detailed and thorough summary of the facts and conflicting clinical evidence, stated his interpretation of the evidence, and made findings. (AR 1255-86); *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). In the ALJ's discussion of each of Drs. Blake, Tkach, Pappas, Coleman, and Cestkowski's opinions, the ALJ discussed, and cited to, specific and legitimate reasons

1    why their opinions were discounted. (AR 1255-86.) Additionally, the ALJ discussed, in
2    detail, the objective medical evidence and subjective testimony.
3            For the reasons stated above, the Court finds that the ALJ gave specific and
4    legitimate reasons for discounting the contradicted opinions. Therefore, the Court finds
5    that the ALJ's findings are supported by substantial evidence. "If the ALJ's finding is
6    supported by substantial evidence, the court 'may not engage in second-guessing.'"
7    *Tommasetti*, 533 F.3d at 1039 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.
8    2002)).

9         **B.    The ALJ Did Not Fail to Develop the Record**

10           "The ALJ in a social security case has an independent 'duty to fully and
11   fairly develop the record and to assure that the claimant's interests are considered.'"
12   *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80
13   F.3d 1273, 1288 (9th Cir. 1996)). "Ambiguous evidence, or the ALJ's own finding that the
14   record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty
15   to "conduct an appropriate inquiry." *Id.* (quoting *Smolen*, 80 F.3d at 1288).
16           Here, Gunnarson does not claim the AR is incomplete or inaccurate. Instead,
17   Gunnarson claims the ALJ improperly discounted several opinions, and inappropriately
18   gave partial weight to others. (ECF No. 21) Gunnarson's argument centers on the theory
19   that the ALJ gave partial weight to opinions that were outdated. (*Id.*) As previously
20   discussed, the ALJ gave specific and legitimate reasons why the weights of the varying
21   opinions where given the weights that they were. Moreover, when the ALJ articulated the
22   reasoning for the determination, the ALJ did not find the record to be inadequate to allow
23   for a proper evaluation of the evidence, and this Court does not find the evidence
24   ambiguous. The ALJ considered all evidence within the AR, and Gunnarson has not
25   alleged that any evidence or records were precluded or excluded from the AR. For these
26   reasons, this Court finds the ALJ did not fail to develop the record, and the ALJ properly
27   considered all evidence contained within the administrative record when issuing the
28   determination in this case.

For the above reasons, the Court finds that the ALJ's RFC finding is supported by substantial evidence.

**V.    CONCLUSION**

Having reviewed the Administrative Record as a whole and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds that the ALJ's decision was supported by substantial evidence.

Accordingly, **IT IS THEREFORE ORDERED** that Gunnarson's motion to remand (ECF No. 21) is **DENIED**, and the Commissioner's cross-motion to affirm (ECF No. 22) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and **CLOSE THIS CASE**.

**DATED**: December 6, 2021.

_____
**UNITED STATES MAGISTRATE JUDGE**